**REICH RADCLIFFE & HOOVER LLP**
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
2030 Main Street, Suite 1300
Irvine, CA 92614
Phone: (949) 975-0512
Fax: (949) 208-2839

*Counsel for Plaintiff Travis Wills*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TROY BISHOP, derivatively on behalf of GERON CORPORATION, | Case No.: 3:25-cv-03356-CRB |
| Plaintiff, | The Hon. Charles R. Breyer |
| v. | **JOINT STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED SHAREHOLDER DERIVATIVE ACTIONS AND APPOINTING CO-LEAD COUNSEL FOR PLAINTIFFS** |
| JOHN A. SCARLETT, ANDREW J. GRETHLEIN, MICHELLE J. ROBERTSON, FAYE FELLER, ANIL KAPUR, JIM ZIEGLER, DAWN C. BIR, GAURAV AGGARWAL, V. BRYAN LAWLIS, JOHN F. MCDONALD, SUSAN M. MOLINEAUX, ELIZABETH G. O'FARRELL, and ROBERT J. SPIEGEL, | |
| Defendants, | |
| and | |
| GERON CORPORATION, | |
| Nominal Defendant. | |

[Caption continued on next page]

| | |
|---|---|
| TRAVIS WILLS, derivatively on behalf of GERON CORPORATION, | Case No.: 4:25-cv-03396-CRB |
| Plaintiff, | |
| v. | |
| JOHN A. SCARLETT, ANDREW J. GRETHLEIN, MICHELLE J. ROBERTSON, FAYE FELLER, ANIL KAPUR, JAMES ZIEGLER, DAWN C. BIR, GAURAV AGGARWAL, V. BRYAN LAWLIS, JOHN F. MCDONALD, SUSAN M. MOLINEAUX, ELIZABETH G. O'FARRELL, and ROBERT J. SPIEGEL, | |
| Defendants, | |
| and | |
| GERON CORPORATION, | |
| Nominal Defendant. | |

[Caption continued on next page]

JOINT STIPULATION AND [~~PROPOSED~~] ORDER CONSOLIDATING RELATED
SHAREHOLDER DERIVATIVE ACTIONS AND APPOINTING CO-LEAD COUNSEL FOR
PLAINTIFFS

- 2 -

1

2    CHAD LERNER, derivatively on behalf of          Case No.: 3:25-cv-03401-CRB
     GERON CORPORATION,
3

4                    Plaintiff,

5          v.

6    JOHN A. SCARLETT, ANDREW J.
     GRETHLEIN, MICHELLE J. ROBERTSON,
7    FAYE FELLER, ANIL KAPUR, JIM
     ZIEGLER, GAURAV AGGARWAL, DAWN
8    C. BIR, V. BRYAN LAWLIS, JOHN F.
     MCDONALD, SUSAN M. MOLINEAUX,
9    ELIZABETH G. O'FARRELL, and ROBERT
     SPIEGEL,
10

11                   Defendants,

12         and

13   GERON CORPORATION,

14                   Nominal Defendant.

15

16         WHEREAS, on April 15, 2025, Plaintiff Edward Troy Bishop ("Bishop") filed a

17   shareholder derivative action on behalf of nominal defendant Geron Corporation ("Geron" or the

18   "Company") in this Court alleging causes of action for violations of Section 14(a) of the Securities

19   Exchange Act of 1934 (the "Exchange Act"), breach of fiduciary duty, aiding and abetting breach

20   of fiduciary duty, unjust enrichment, and waste of corporate assets against defendants John A.

21   Scarlett, Andrew J. Grethlein, Michelle J. Robertson, Faye Feller, Anil Kapur, Jim Ziegler, Dawn

22   C. Bir, Gaurav Aggarwal, V. Bryan Lawlis, John F. McDonald, Susan M. Molineaux, Elizabeth

23   G. O'Farrell, and Robert J. Spiegel (collectively, the "Individual Defendants," and together with

24   the Company, "Defendants"), captioned *Bishop v. Scarlett, et al*., Case No. 3:25-cv-03356 (N.D.

25   Cal.) (the "*Bishop* Action");

26         WHEREAS, on April 16, 2025, Plaintiff Travis Wills ("Wills") filed a shareholder

27   derivative action on behalf of nominal defendant Geron in this Court alleging causes of action for

28
─────────────────────────────────────────────
     JOINT STIPULATION AND [~~PROPOSED~~] ORDER CONSOLIDATING RELATED
     SHAREHOLDER DERIVATIVE ACTIONS AND APPOINTING CO-LEAD COUNSEL FOR
     PLAINTIFFS

1  violations of Section 10(b) and Rule 10b-5 of the Exchange Act, breach of fiduciary duty, unjust

2  enrichment, and waste of corporate assets against the Individual Defendants, captioned *Wills v.*

3  *Scarlett, et al.*, Case No. 4:25-cv-03396 (N.D. Cal.) (the "*Wills* Action");

4  WHEREAS, on April 16, 2025, Plaintiff Chad Lerner ("Lerner," and together with Bishop

5  and Wills, "Plaintiffs")[1] filed a shareholder derivative action on behalf of nominal defendant Geron

6  in this Court alleging causes of action for violations of Section 14(a) of the Securities Exchange

7  Act of 1934 (the "Exchange Act"), breach of fiduciary duty, unjust enrichment, abuse of control,

8  gross mismanagement, and waste of corporate assets against the Individual Defendants, captioned

9  *Lerner v. Scarlett, et al.*, Case No. 3:25-cv-03401 (N.D. Cal.) (the "*Lerner* Derivative Action,"

10  and together with the *Bishop* Action and the *Wills* Action, the "Related Derivative Actions");

11  WHEREAS, the Parties agree that the Related Derivative Actions challenge substantially

12  similar alleged conduct and involve overlapping questions of law and fact, and that the

13  administration of justice would be best served by consolidating the Related Derivative Actions;

14  WHEREAS, the Parties respectfully submit that the Related Derivative Actions should be

15  consolidated pursuant to Federal Rule of Civil Procedure 42(a);

16  WHEREAS, in order to realize the efficiencies made possible by consolidation of the

17  Related Derivative Actions, Plaintiffs agree that Rigrodsky Law, P.A. and Lifshitz Law PLLC, the

18  resumes of which are attached hereto as Exhibits A and B, respectively, shall be designated as Co-

19  Lead Counsel for plaintiffs in the consolidated derivative action;

20  WHEREAS, Defendants take no position regarding appointment of Co-Lead Counsel for

21  plaintiffs; and

22  WHEREAS, by entering into this Stipulation, Defendants do not waive and expressly

23  reserve all rights, defenses, and objections (other than those relating to service of process),

24  including those relating to the merits, jurisdiction, and venue.

25  IT IS HEREBY STIPULATED AND AGREED among the Parties, and respectfully

26

27  _____

[1] Plaintiffs and Defendants, taken together, are referred to herein as the "Parties."

28
JOINT STIPULATION AND [~~PROPOSED~~] ORDER CONSOLIDATING RELATED
SHAREHOLDER DERIVATIVE ACTIONS AND APPOINTING CO-LEAD COUNSEL FOR
PLAINTIFFS

submitted for the Court's approval to consolidate the Related Derivative Actions pursuant to the following terms:

1.    To the extent they have not already been served, Defendants hereby accept service of the complaints in the Related Derivative Actions.

2.    The Parties shall have 30 days upon approval of this Order to submit a proposed schedule, and Defendants are not required to respond to the complaints until the date set by the Court in ruling on the proposed schedule.

3.    The Related Derivative Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial, under Case No. 3:25-cv-03356-CRB (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Bishop v. Scarlett, et al.* | 3:25-cv-03356-CRB | 4/15/2025 |
| *Wills v. Scarlett, et al.* | 4:25-cv-03396-CRB | 4/16/2025 |
| *Lerner v. Scarlett, et al.* | 3:25-cv-03401-CRB | 4/16/2025 |

4.    Every pleading in the Consolidated Action, or in any separate action included herein, must bear the following caption:

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE GERON CORPORATION DERIVATIVE LITIGATION | Case No. 3:25-cv-03356-CRB |
| | (Consolidated) |
| This Document Relates to:<br><br>ALL ACTIONS | |

5.    All papers filed in connection with the Consolidated Action will be maintained in one file under Case No. 3:25-cv-03356-CRB.

6.      Co-Lead Counsel for Plaintiffs in this Consolidated Action shall be:

**RIGRODSKY LAW, P.A.**
Timothy J. MacFall
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: tjm@rl-legal.com
Email: sa@rl-legal.com

**LIFSHITZ LAW PLLC**
Joshua M. Lifshitz
1190 Broadway
Hewlett, NY 11557
Telephone: (516) 493-9780
Email: jlifshitz@lifshitzlaw.com

7.      Plaintiffs' Co-Lead Counsel shall have the sole authority to speak for plaintiffs in all matters regarding pre-trial procedure, trial, and settlement negotiations and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort.

8.      Co-Lead Counsel will be responsible for coordinating all activities and appearances on behalf of plaintiffs. No motion, request for discovery, or other pre-trial or trial proceedings will be initiated or filed by any plaintiffs except through Co-Lead Counsel.

9.      Counsel for Defendants may rely upon all agreements made with Co-Lead Counsel, or other duly authorized representatives of Co-Lead Counsel, and such agreements shall be binding on all plaintiffs.

10.     This Order shall apply to each shareholder derivative action arising out of the same, or substantially the same, transactions or events as these cases, which is subsequently filed in, removed to, reassigned to, or transferred to this Court. When a shareholder derivative action that properly belongs as part of *In re Geron Corporation Derivative Litigation*, Case No. 3:25-cv-03356-CRB, is hereafter filed in this Court, removed to this Court, reassigned to this Court, or transferred here from another court, this Court requests the assistance of counsel in calling to the attention of the clerk of the Court the filing, removal, reassignment, or transfer of any case that

1   might properly be consolidated as part of *In re Geron Corporation Derivative Litigation*, Case No.

2   3:25-cv-03356-CRB, and counsel are to assist in assuring that counsel in subsequent actions

3   receive notice of this order. Unless otherwise ordered, the terms of all orders, rulings, and decisions

4   in the Consolidated Action shall apply to all later shareholder derivative actions involving Geron

5   filed in this Court, and such shareholder derivative actions shall be consolidated into the

6   Consolidated Action.

7        11.    All papers and documents previously filed and/or served in the Related Derivative

8   Actions shall be deemed a part of the record in the Consolidated Action.

9        12.    This stipulation is without waiver or prejudice to any and all claims, defenses,

10  arguments, motions, or any requests for other relief that would otherwise be available to the Parties

11  in the Related Derivative Actions.

12       **IT IS SO STIPULATED**

13

14  Dated: May 16, 2025          Respectfully submitted,

15                 **REICH RADCLIFFE & HOOVER LLP**

16                 */s/ Adam T. Hoover*

17                 Adam T. Hoover (SBN 243226)
                   2030 Main Street, Suite 1300

18                 Irvine, CA 92614
                   Telephone: (949) 975-0512

19                 Facsimile: (949) 208-2839
                   adhoover@reichradcliffe.com

20

21                 **LIFSHITZ LAW PLLC**
                   Joshua M. Lifshitz

22                 1190 Broadway
                   Hewlett, NY 11557

23                 Telephone: (516) 493-9780
                   Facsimile: (516) 280-7376

24                 jlifshitz@lifshitzlaw.com

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Counsel for Plaintiff Travis Wills*

**THE BROWN LAW FIRM, P.C.**

*/s/ Robert C. Moest*
Robert C. Moest, Of Counsel, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff Chad Lerner*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

*/s/ Alex J. Tramontano*
Betsy C. Manifold (CA. Bar No. 182450)
Rachele R. Byrd (CA. Bar No. 190634
Alex J. Tramontano (CA. Bar No. 276666)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
Email: manifold@whafh.com
Email: byrd@whafh.com
Email: tramontano@whafh.com

**RIGRODSKY LAW, P.A.**
Timothy J. MacFall
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: tjm@rl-legal.com
Email: sa@rl-legal.com

JOINT STIPULATION AND [~~PROPOSED~~] ORDER CONSOLIDATING RELATED
SHAREHOLDER DERIVATIVE ACTIONS AND APPOINTING CO-LEAD COUNSEL FOR
PLAINTIFFS
- 8 -

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

*Counsel for Plaintiff Edward Troy Bishop*

**COOLEY LLP**

*/s/ Ryan E. Blair*
Ryan E. Blair (246724)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone: (858) 550 6000
Facsimile: (858) 550-6420
Email: rblair@cooley.com

*Counsel for Defendants John A. Scarlett, Andrew J. Grethlein, Michelle J. Robertson, Faye Feller, Anil Kapur, Jim Ziegler, Dawn C. Bir, Gaurav Aggarwal, V. Bryan Lawlis, John F. McDonald, Susan M. Molineaux, Elizabeth G. O'Farrell, and Robert J. Spiegel and Nominal Defendant Geron Corporation*

\*      \*      \*

**[PROPOSED] ORDER**

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED:   May 16, 2025                          _____
                                              HONORABLE CHARLES R. BREYER
                                              UNITED STATES DISTRICT JUDGE



EXHIBIT A

**RIGRODSKY LAW** P.A.

# ABOUT THE FIRM

Rigrodsky Law, P.A. (the "Firm") is a law firm with a national practice serving its clients from offices located in Delaware and New York.  The Firm concentrates its practice on representing institutional and individual investors in securities fraud, corporate, and consumer class action lawsuits filed throughout the United States.

The Firm's attorneys have decades of litigation experience and have achieved precedent-setting victories for victims of corporate wrongdoing.  The Firm has recovered hundreds of millions of dollars on behalf of investors and achieved substantial corporate governance reforms in numerous securities fraud, corporate class action, and shareholder derivative lawsuits filed throughout the nation.

# SELECT FIRM ACCOMPLISHMENTS

***Mason-Mahon, et al. v. Flint, et al.,***
**Index No. 602052/2014 (New York Sup. Ct.)**

The Firm served as co-lead counsel in a derivative action against past and present members of the board of directors ("Board") of HSBC Holdings PLC, a banking corporation organized under the laws of the United Kingdom, and its various U.S. subsidiaries ("HSBC").  Plaintiffs alleged that the Board caused, and/or recklessly permitted, HSBC to violate the anti-money laundering ("AML") and sanctions laws of the United States, as well as the banking laws of the State of New York, for more than a decade, by unlawfully processing billions in U.S. dollar transactions for narcotics traffickers and state sponsors of terrorism.  As a result, in 2012, HSBC entered into a deferred prosecution agreement with the Department of Justice and the New York County District Attorneys' Office, as well as settlements with various federal and state regulators, paying $1.92 billion in fines, forfeitures, and penalties.  In addition, HSBC was required to undertake years-long AML and sanctions compliance remediation efforts.  Following dismissal of the action for failure to comply with the requirements of U.K. law, Plaintiffs achieved reversal of that dismissal on appeal.  *Mason-Mahon v. Flint*, 166 A.D.3d 754 (2d Dept. 2018).  Following the denial of defendants' appellate motion for reargument, or certification to the New York Court of Appeals, and additional motion practice before the trial court, plaintiffs achieved a $72.5 million cash settlement on behalf of nominal defendant HSBC.  In addition, HSBC agreed to certain corporate governance enhancements to bolster its AML and sanctions compliance policies and procedures.  The $72.5 million cash component of the settlement is believed to be the first derivative cash settlement against a foreign corporation, as well as the sixteenth largest derivative cash settlement, in the United States.

***In re CNX Gas Corporation Shareholders Litigation***,
**Consol. C.A. No. 5377-VCL (Del. Ch.)**

The Firm served as sole lead counsel in a class action before the Delaware Court of Chancery brought on behalf of the shareholders of CNX Gas Corporation ("CNX") who alleged that they suffered financial injury in connection with the going-private acquisition of CNX by its controlling

parent company owner, CONSOL Energy, Inc.  After expedited proceedings, on May 26, 2010, the Court ruled that plaintiffs had made a sufficient showing that the action should move forward to trial.  In so doing, the Court issued an important opinion clarifying and defining the rights of shareholders in the context of a going-private tender offer by a controlling shareholder.  *In re CNX Gas Corp. S'holders Litig*., 4 A.3d 397 (Del. Ch. 2010).  The Court of Chancery subsequently approved a settlement of the action where defendants and their insurers agreed to pay $42.73 million to stockholders.  The parties reached settlement just days before the commencement of trial, after submission of pretrial briefing and extensive fact and expert discovery.  The settlement, which was approved on August 23, 2013, was the largest settlement of a case challenging a merger in the Court of Chancery in 2013.

### *In re Schuff International Inc. Stockholders Litigation*, Consol. C.A. No. 10323-VCZ (Del. Ch.)

The Firm served as co-lead counsel in a class action before the Delaware Court of Chancery brought on behalf of the shareholders of Schuff International Inc. ("Schuff" or the "Company"). After more than five years of litigation, plaintiff achieved a settlement that more than doubled the price – from $31.50 to $67.45 per share – that Schuff's shareholders received in the October 2014 cash tender offer from the Company's majority stockholder, HC2 Holdings, Inc.  The $35.95 per share price increase for the stockholders who tendered their shares – totaling nearly $20.5 million – was a premium of more than 114% over the October 2014 tender offer price, which represented the best recovery in Delaware shareholder class action history.  The settlement also provided an additional cash payment to the Company's remaining minority stockholders of $1,016,060, or $3.51 per share.

### *In re Metrologic Instruments, Inc. Shareholders Litigation*, Docket No. L-6430-06 (N.J. Super. Ct.)

The Firm served as sole lead counsel on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders.  This class action arose from a transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means.  Plaintiffs alleged that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of the Board), and Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott").  C. Harry Knowles and Elliott (the "Knowles Group") were together controlling shareholders of Metrologic.  The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity.  On April 17, 2009, the Court denied defendants' motion to dismiss the case.  *In re Metrologic Instruments, Inc. S'holders Litig*., Docket No. L-6430-06 (N.J. Super. Ct. Apr. 17, 2009) (Order). In 2013, plaintiffs and defendant Metrologic, in addition to the individual members of Metrologic's board of directors, reached a partial settlement in exchange for a payment of $11.95 million, which was approved by the Court on December 16, 2013.  That partial settlement excluded

the parties alleged to be Metrologic's controlling stockholders. Plaintiffs continued to press claims against those remaining entities, ultimately resulting in an additional settlement providing for the creation of a $9.75 million fund to be distributed to the class. The Court approved the second settlement on April 6, 2018.

### *In re Cornerstone Therapeutics, Inc. Stockholder Litigation*, Consol. C.A. No. 8922-VCG (Del. Ch.)

The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Cornerstone Therapeutics, Inc. ("Cornerstone"). Plaintiffs alleged that the proposed acquisition of Cornerstone by its majority stockholder, Chiesi Farmaceutici S.p.A., was accomplished pursuant to an unfair process and at an unfair price. After three years of litigation, including an appeal to the Supreme Court of Delaware, and following mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to pay $17,881,555 to the settlement class. The Delaware Court of Chancery approved the settlement on January 26, 2017.

### *Davydov v. Roberts*, C.A. No. 2021-0415-SG (Del. Ch.)

The Firm served as lead counsel in this derivative action before the Delaware Court of Chancery brought on behalf of Granite Construction, Inc. ("Granite" or the "Company"). Plaintiff alleged that certain directors and officers of Granite failed to exercise adequate oversight over the Company, implement adequate internal controls over financial reporting, and implement adequate accounting processes and controls, which caused material misstatements in the Company's publicly reported financial statements necessitating a restatement of more than two years of financial statements. Following discovery and mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to pay $7.5 million to the Company and implement a series of corporate governance reforms. The Delaware Court of Chancery approved the settlement, which also resolved a related derivative action in the United States District Court for the Northern District of California, on July 12, 2022.

### *In re Prospect Medical Holdings, Inc. Shareholders Litigation*, Consol. C.A. No. 5760-VCN (Del. Ch.)

The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Prospect Medical Holdings, Inc. ("Prospect"). Plaintiffs alleged that the proposed acquisition of Prospect by entities sponsored by Leonard Green & Partners, L.P. was the result of an unfair process and would provide Prospect's shareholders with inadequate consideration. Following discovery and mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to provide $6.5 million to the settlement class. The Delaware Court of Chancery approved the settlement on January 21, 2016.

### *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*, Case No. 2:13-md-02451-ADS-AKT (E.D.N.Y.)

The Firm was appointed Co-Interim Class Counsel in this multidistrict litigation pending in the United States District Court for the Eastern District of New York. This action was brought on

behalf of a national class of checking account customers of HSBC Bank USA, N.A. ("HSBC") who were improperly charged overdraft fees on debit card transactions as a result of HSBC's deceptive overdraft fee practices. On March 5, 2014, the District Court granted, in part, and denied, in part, defendants' motion to dismiss plaintiffs' complaint. On April 21, 2014, the District Court granted plaintiffs' motion for reconsideration of the dismissal of certain claims and reinstated those claims. Following the completion of discovery and mediation, on February 10, 2016, the parties reached an agreement to settle the claims through a parallel state action, creating a $32 million cash settlement fund for the benefit of the class. The settlement was approved by the Court on October 18, 2016.

### *In re Nevsun Resources Ltd.*,
### Case No. 1:12-cv-01845-PGG (S.D.N.Y.)

The Firm was appointed co-lead counsel in this federal securities fraud class action brought on behalf of the shareholders of Nevsun Resources Ltd. (the "Company") against the Company and certain of its officers. Plaintiffs alleged that, during the class period, defendants made materially false and misleading statements by overstating the gold reserves at the Company's Bisha Mine in Eritrea, Africa. On September 27, 2013, the District Court denied, in substantial part, defendants' motion to dismiss the complaint. Following mediation, on May 1, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to create a $5,995,000 cash settlement fund for the benefit of the class. The Court approved the settlement on February 13, 2015.

### *In re Mediacom Communications Corporation Shareholders Litigation*,
### Consol. C.A. No. 5537-VCS (Del. Ch.)

The Firm was one of the lead counsel and one of the primary negotiators of a settlement that resulted in an additional $10 million paid to stockholders. Plaintiffs' counsel eschewed multiple invitations to negotiate simultaneously with the special committee of Mediacom Communications Corporation's ("Mediacom") board of directors, and instead favored the approach of focusing their litigation efforts on increasing the consideration to stockholders only after the merger agreement had been negotiated and approved by the Mediacom board, as recommended by its special committee.

### *In re Fuqi International, Inc. Securities Litigation*,
### Case No. 1:10-cv-02515-DAB (S.D.N.Y.)

The Firm was one of plaintiffs' counsel in this federal securities class action brought on behalf of the shareholders of Fuqi International, Inc. (the "Company") who purchased Company shares between May 15, 2009 and March 25, 2011, inclusive, and on behalf of a subclass of all those who purchased or otherwise acquired Company common stock pursuant, or traceable, to the secondary offering on or about July 22, 2009. Plaintiffs alleged that, during the class period and in the offering materials, defendants made materially false and misleading statements concerning the adequacy of its internal financial controls, as well as its financial results. On February 18, 2016, the Court approved the settlement of claims against the Company and the individual defendants. The settlement provided for the creation of a $7.5 million cash settlement fund for the benefit of the class. On January 8, 2018, the Court approved a $1.1 million cash settlement in the related action, *Puerto Rico Government Judiciary Employees Retirement System*, *v.*

*Marcum, LLP,* Case No. 1:15-cv-01938-DAB (S.D.N.Y.), for claims against the Company's class period independent auditor.

### *Dannis v. Nichols*,
### Case No. 13-CI-00452 (Ky. Cir. Ct.)

The Firm was one of the lead counsel that litigated and negotiated the settlement in this class action. Plaintiffs challenged the fairness of a proposed going-private squeeze-out merger by NTS Realty Holdings Limited Partnership's ("NTS") controlling unitholder and Chairman of the Board. The action settled for additional consideration of $7,401,487, or more than $1.75 per unit of NTS. The settlement was approved by the Court on April 24, 2014.

### *Minerva Group LP v. Keane*,
### Index No. 800621/2013 (N.Y. Sup. Ct.)

The Firm served as co-lead counsel in a class action brought on behalf of the public stockholders of Mod-Pac Corp. ("Mod-Pac" or the "Company") against members of Mod-Pac's board of directors, including the Company's controlling stockholders, for alleged breaches of fiduciary duties in connection with the controlling stockholders' offer to acquire all of the outstanding shares of Mod-Pac that they did not already own through an unfair process and for an unfair price. The parties reached an agreement to settle the action, which the Court approved on December 13, 2013, pursuant to which defendants agreed to pay Mod-Pac's stockholders an additional $2.4 million, which was an increase from $8.40 per share to $9.25 per share.

### *Yang v. Focus Media Holding Limited*,
### Case No. 1:11-cv-09051-CM (S.D.N.Y.)

The Firm served as lead counsel in *Focus Media*, in which plaintiff alleged violations of the Securities Exchange Act of 1934. On May 13, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to pay $3,700,000 to the class to resolve the action. The Court approved the settlement on September 4, 2014.

### *Forgo v. Health Grades, Inc.*,
### C.A. No. 5716-VCS (Del. Ch.)

The Firm was among the lead counsel in *Health Grades*, where, after an injunction hearing, the parties settled for extensive modification to the terms of the challenged transaction. These modifications included: a "Fort Howard" press release; a twenty-day extension of the challenged tender offer; the agreement of certain officers who had entered into tender and support agreements to similarly support a better deal; a twenty-two percent reduction in the termination fee; a forty percent reduction in the buyer's matching rights; the creation of an independent committee to negotiate with bidders and approve offers free from the influence of the allegedly self-interested chief executive; and the imposition of a requirement that a majority of the disinterested stockholders tender for the transaction to be consummated.

### *In re Lear Corp. Shareholders Litigation*,
### Consol. C.A. No. 2728-VCS (Del. Ch.)

The Firm served as Co-Chair of Plaintiffs' Executive Committee in this class action brought on

behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP"). The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed its concern regarding the price AREP offered to acquire Lear. Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP following a sales process that was tilted in favor of AREP. Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer. As a result, plaintiffs alleged that no rival bidder was likely to emerge. Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP. The Firm obtained a preliminary injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures. *In re Lear Corp. S'holders Litig.,* 926 A.2d 94 (Del. Ch. 2008). As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 proxy supplement, which allowed stockholders to consequentially reject the merger in July 2007. In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

### In re The Topps Company, Inc. Shareholders Litigation, Consol. C.A. No. 2786-VCS (Del. Ch.)

The Firm served as Co-Lead Counsel for Plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante"). Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders. The Firm moved the Court to issue a preliminary injunction to stop the deal. In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion. *In re The Topps Co., Inc. S'holders Litig.,* 926 A.2d 58 (Del. Ch. 2007). The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

### Manville Personal Injury Trust v. Blankenship, Case No. 07-C-1333 (W. Va. Cir.)

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations. Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations. This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies. The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the

SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues.  In June 2008, the Circuit Court approved the settlement.  *Manville Personal Injury Trust v. Blankenship,* Case No. 07-C-1333 (W. Va. Cir. June 30, 2008) (Order).

### *In re Chiquita Brands International, Inc., Alien Tort Statute and Shareholder Derivative Litigation,*
### Case No. 08-01916-MD (S.D. Fla.)

The Firm acted as counsel for plaintiff City of Philadelphia Public Employees' Retirement System in a shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International, Inc. ("Chiquita" or the "Company").  Plaintiffs alleged that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations.  Plaintiffs alleged that these breaches of fiduciary duty, along with the resultant violations of federal law, had substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea.  After years of litigation, on October 15, 2010, the District Court entered an Order approving a settlement of the litigation.  *In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holder Derivative Litig*., Case No. 08-01916-MD (S.D. Fla. Oct. 15, 2010) (Order).  Among other things, the settlement provided substantial and important corporate governance reforms relating to the Chiquita board's oversight and management of the Company's compliance with federal law involving Chiquita's overseas business.

### *County of York Employees Retirement Plan v. Jung*,
### Index No. 651304-2010 (N.Y. Sup. Ct.)

The Firm was one of plaintiffs' counsel representing the County of York Employees Retirement Plan in this derivative action against various directors and officers of Avon Products, Inc. ("Avon").  Plaintiffs alleged that various Avon employees violated the Foreign Corrupt Practices Act by bribing foreign officials in China.  On August 3, 2016, the Court approved a settlement that provided, among other things, for Avon to adopt a global anti-corruption policy and code of conduct, as well as implement specific Foreign Corrupt Practices Act testing.

### *U.F.C.W. Local 1776 & Participating Employers Pension Fund v. Devitre*,
### Case No. CV 10-2496 (D. Ariz.)

The Firm was one of plaintiffs' counsel representing U.F.C.W. Local 1776 & Participating Employers Pension Fund against various officers and directors of the Western Union Company (the "Company") and its wholly-owned subsidiary, Western Union Financial.  Plaintiff alleged that the Company's board of directors failed to appropriately oversee the Company's compliance with applicable anti-money laundering laws, regulations, and rules resulting in the Company's payment of $94 million to resolve all potential regulatory, civil, and criminal claims.  On June 14, 2002, the Court approved a settlement in which the Company agreed to require the board of directors to review all reports by an independent compliance monitor; review the Company's compliance program and policies relating to the anti-money laundering laws and regulations; and

review and approve the *Bank Secrecy Act and Anti-Money Laundering Compliance Program Manual for the United States* on a quarterly basis.

### *PG&E San Bruno Fire Cases*, Case No. JCCP 4648-C (Cal. Super. Ct.)

The Firm, as counsel for plaintiff, brought a shareholder derivative case on behalf of the shareholders of PG&E Corporation ("PG&E") in connection with the tragic loss of life and property resulting from a San Bruno, California gas leak. After years of litigation, the Firm helped achieve a recovery of $90 million, which constituted the seventh largest shareholder derivative settlement on record. To improve and ensure pipeline safety, plaintiffs also obtained comprehensive gas operations therapeutics with a stipulated value of $32.05 million. The settlement also fundamentally altered how PG&E conducts its gas operations and provided extensive corporate governance reforms.

### *Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. v. Blank*, Index No. 09/3560 (N.Y. Sup.)

The Firm was counsel for a large, European institutional investor in a shareholder derivative lawsuit brought against Lloyds Banking Group p.l.c. ("Lloyds"). The lawsuit alleged that the directors of Lloyds violated their fiduciary duties to shareholders by failing to monitor the company's compliance with federal and state banking laws in connection with alleged illegal transfers of funds in the United States on behalf of certain sovereign countries including Iran. After years of litigation and negotiations, the Firm helped achieve significant corporate governance changes to ensure that the board of directors was more actively engaged in the monitoring of Lloyds' money transfer businesses and compliance with federal and state banking rules and regulations.

### *In re MBNA Corp. Securities Litigation*, Case No. 05-CV-00272-GMS (D. Del.)

The Firm served as liaison counsel for lead plaintiff and the members of the class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the "Class Period"). Plaintiffs alleged that: (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable. As a result, on April 21, 2005, MBNA was forced to reveal that: (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective. On July 6, 2007, the Court denied defendants' motion to dismiss the amended complaint. *Baker v. MBNA Corp.,* Case No. 05-cv-00272-GMS (D. Del July 6, 2007) (Mem. Op.). Subsequently, after substantial litigation, the parties settled the litigation resulting in the creation of a $25 million fund to compensate injured investors. *In re MBNA Corp. Sec. Litig.,* Case No.

05-cv-00272-GMS (D. Del. Oct. 6, 2009) (Order).

### *In re Molson Coors Brewing Co. Securities Litigation*, Case No. 05-CV-00294-GMS (D. Del.)

The Firm served as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the class in this securities class action brought on behalf of all persons who were: (i) former shareholders of Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson with and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive. Plaintiffs alleged that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely affect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost. After extensive litigation efforts in both the United States and Canadian actions, the parties settled the lawsuits resulting in the creation of a $6 million fund for the payment of investor claims. *In re Molson Coors Brewing Co. Sec. Litig*., Case No. 05-cv-00294-GMS (D. Del. May 19, 2009).

### *County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.*, C.A. No. 4066-VCN (Del. Ch.)

The Firm served as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") in connection with its sale to Bank of America Corporation ("BofA"). Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the proposed acquisition. On October 28, 2008, the Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss. *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.,* C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008). Subsequently, the Firm engaged in expedited discovery. After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants made additional, substantive disclosures in their definitive proxy statement. Thereafter, the shareholders of Merrill and BofA approved the merger.

### *David B. Shaev IRA v. Sidhu*, Case No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)

The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign" or the "Company"). Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign

sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp. Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange. Additionally, plaintiffs alleged the board members had improper motives of entrenchment and participated in protection of their own self interests and the improper subversion of a proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC. Following the close of the sale in May 2006, the Firm helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and class members, including substantial corporate governance changes adopted by the Company. The Court approved the settlement. *David B. Shaev IRA v. Sidhu,* No. 00983 (Phila. C.C.P., Commerce Div. Oct. 28, 2008) (Order). The Supreme Court of Pennsylvania upheld the settlement, which had been challenged in both the trial court and the intermediate appellate court. *Shaev v. Sidhu*, Pennsylvania Docket No. 470 EAL 2010 (Pa. Dec. 21, 2010) (Order).

### *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow*, C.A. No. 2683-N (Del. Ch.)

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegesellschaft mbH, a European institutional investor, in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company"). The litigation sought to enjoin the proposed acquisition of National Home by a consortium comprised of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration. The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by National Home's minority, public shareholders. As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more than $3.76 million to National Home's shareholders. In addition, even after the merger agreement was approved, the Firm continued to advocate on behalf of shareholders, and Angelo Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value. The Court approved the settlement. *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow,* C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).

### *Plymouth Co. Retirement System v. MacDermid, Inc.*, Case No. 2006CV9741 (Colo. Dist. Ct.)

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders. This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P. Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after completion of the proposed transaction, and certain facts and assumptions underlying the fairness opinion. As a result of the Firm's negotiations with defendants, MacDermid made

additional disclosures in its definitive proxy statement, including, but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders, and financial analyses by Merrill Lynch. The Court approved the settlement. *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* Case No. 2006CV9741 (Colo. Dist. Ct. Dec. 10, 2007) (Order).

### *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* Case No. 07-CV-3476-GEL (S.D.N.Y.)

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium. Plaintiff alleged that the acquisition was unfair to the class. As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million. Citing the efforts of plaintiff's counsel, the Court approved the settlement. *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* Case No. 3476-GEL (S.D.N.Y. Feb. 8, 2008) (Order).

### *In re American Pharmaceutical Partners, Inc. Shareholders Litigation,* Consol. C.A. No. 1823-VCL (Del. Ch.)

The Firm served as one of co-lead counsel in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc. Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration. In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006. After nearly eighteen months of arm's-length negotiations and the production of thousands of pages of documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action. In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represented approximately $0.60 per damaged minority share for the shareholders. The Court approved the settlement. *In re Am. Pharm. Partners, Inc. S'holders Litig.,* Consol. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).

### *Schultze Asset Management LLC v. Washington Group International, Inc.,* C.A. No. 3261-VCN (Del. Ch.)

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation. Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders. In addition, plaintiff alleged that the Company's definitive proxy statement was materially misleading because, among other things, it failed to explain why Washington Group used overly conservative financial projections to support the fairness opinion issued in connection with the transactions. As a result of the Firm's negotiations with defendants, Washington Group agreed to and made additional

curative disclosures in the definitive proxy statement. Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs, the Company's financial advisor, in support of the merger, among other things. Additionally, Washington Group amended the merger agreement whereby it increased the amount of consideration paid to each Washington Group shareholder. The Court approved the settlement. *Schultze Asset Mgmt. LLC v. Wash. Grp. Int'l, Inc.,* C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).

### *Sheetmetal Workers' National Pension Fund v. Hill*, Case No. 07-cv-2269-RBK (D.N.J.)

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger"). Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair. Plaintiff requested the Court to issue an injunction to stop the Merger and sought expedited discovery. After extensive discovery, the Firm helped negotiate a settlement, which resulted in a $77 million reduction in the termination fee, and numerous additional disclosures in the definitive proxy statement. The Court approved the settlement. *Sheetmetal Workers' Nat'l Pension Fund v. Hill,* Case No. 07-cv-269 (D.N.J. May 9, 2008) (Order).

### *Virgin Islands Government Employees' Retirement System v. Alvarez*, C.A. No. 3976-VCS (Del. Ch.)

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its board of directors and certain officers for breach of fiduciary duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws, including the Bank Secrecy Act. The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group and Bank of Tokyo-UFJ Ltd. Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations. The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction. The Court approved the settlement. *V.I. Gov't Employees' Ret. Sys. v. Alvarez,* C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order).

# THE FIRM'S PROFESSIONALS

**Seth D. Rigrodsky** is a founding Shareholder of the Firm and has thirty-five years of legal experience.  Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center.  While at Georgetown, he served as Articles Editor of the *Georgetown Law Review*.  Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II of the Supreme Court of Delaware.  Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York, New York, and Morris, Nichols, Arsht & Tunnell LLP in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation.  In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits.  He joined the law firm of Milberg LLP in 2001 and founded its Delaware office.  Mr. Rigrodsky co-founded the Firm in 2006.  He was appointed by the Delaware Court of Chancery to the Rules Committee of the Delaware Bar.  Mr. Rigrodsky is admitted to practice in the States of Delaware and New York, the United States District Courts for the District of Delaware, the Southern District of New York, and the District of Colorado, and the United States Courts of Appeals for the Second, Third, Fourth, and Sixth Circuits.

**Timothy J. MacFall** is a Partner at the Firm and has forty years of legal experience.  Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School.  Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office.  In 1987, he joined the United States Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program.  Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division.  In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York.  As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the United States Court of Appeals for the Second Circuit.  Mr. MacFall was also a speaker at a United States Department of State Conference on pending extradition litigation and the 1986 *Supplementary Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland*; has served as a lecturer at Immigration & Naturalization Service Special Agent training seminars; and assisted in the preparation of a New York City Police Department trial testimony training film. Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992.  Mr. MacFall has represented individual investors, union pension funds, and state pension funds in transactional and federal securities class actions throughout the United States.  Mr. MacFall joined the Firm in April 2009.  Mr. MacFall was selected for inclusion in the 2010, 2011, and 2013-2024 *New York Super Lawyers - Metro Edition* magazines for his work in securities litigation.  Mr. MacFall is admitted to practice in the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado, and the United States Court of Appeals for the Second Circuit.

**Gina M. Serra** is a Partner at the Firm.  Ms. Serra is a *cum laude* graduate of both Rowan University and Widener University School of Law in Wilmington, Delaware.  While at Widener Law, Ms. Serra was a member of the *Widener Law Review* and Vice President of the Moot Court Honor Society and the Justinian Society.  During law school, she also was a judicial intern for the Honorable Henry duPont Ridgely of the Supreme Court of Delaware, and obtained a Trial Advocacy Certificate with honors.  Ms. Serra began her legal career as the judicial law clerk to the Honorable Fred S. Silverman of the Superior Court of Delaware.  She also was a member of the Richard S. Rodney American Inn of Court.  Ms. Serra joined the Firm in September 2010.  She was named a Delaware "Rising Star" by *Super Lawyers* for 2015, 2016, 2017, 2018, and 2019. Ms. Serra is admitted to practice in the States of Delaware, New York, and New Jersey, the Commonwealth of Pennsylvania, the United States District Courts for the Districts of Delaware and Colorado, and the United States Court of Appeals for the Sixth Circuit.

**Herbert W. Mondros** is a Partner at the Firm. Mr. Mondros is a graduate of Fairleigh Dickinson University and a *magna cum laude* graduate of Tulane University Law School, where he served as a member of the *Tulane Law Review* and was awarded the Order of the Coif.  After graduating law school, Mr. Mondros entered the United States Department of Justice through the Honors Program.  He served as a Trial Attorney in the Environmental Crimes Section and Assistant U.S. Attorney and Chief Appellate Counsel for the United States Attorney for the Eastern District of Louisiana.  Prior to joining Rigrodsky Law, Mr. Mondros was a litigation partner at Margolis Edelstein and a litigation associate in the Delaware office of Skadden, Arps, Slate, Meagher & Flom LLP.  He has represented plaintiffs and defendants in shareholder corporate and derivative litigation, securities and consumer fraud class actions, and commercial civil litigation.  Mr. Mondros routinely litigates in all of Delaware's state and federal courts.  He has an active pro bono practice, representing defendants in capital punishment cases and plaintiffs in prisoner civil rights cases.  Mr. Mondros has been a member of defense teams that exonerated and freed two individuals who had been wrongfully convicted and collectively served more than thirty years on Delaware's death row, and a third who served thirty-eight years in prison for a crime he did not commit.  Mr. Mondros serves on the Board of Innocence Delaware, an innocence organization dedicated to the exoneration of wrongfully convicted individuals.  Mr. Mondros is admitted to practice in the State of Delaware, the Commonwealth of Pennsylvania, and the United States District Courts for the District of Alaska, the District of Delaware, the Eastern and Western Districts of Arkansas, the Eastern District of Louisiana, the Eastern District of Oklahoma, and the Eastern District of Pennsylvania.

**Vincent A. Licata** is a Partner at the Firm.  Mr. Licata graduated from the Benjamin N. Cardozo School of Law with a concentration in Business Law, and obtained his bachelor's degree in Law and Policy from Dickinson College.  During law school, Mr. Licata served as a judicial intern for two New York State Supreme Court judges, in addition to clerking for a midtown litigation boutique.  He also served as a Research Assistant for tax professor Edward A. Zelinsky, and as a Notes Editor for the Cardozo Journal of Conflict Resolution.  Mr. Licata joined the Firm in September 2020 and is admitted to practice in the State of New York.

**Robert R. Ayers** is an Associate at the Firm. Mr. Ayers is a *magna cum laude* graduate of Northeastern University and a graduate of the Benjamin N. Cardozo School of Law, where he served as Problem Writer and Staff Editor of the Moot Court Honor Society. During law school,

Mr. Ayers served as a judicial intern for the Honorable O. Peter Sherwood of the New York County Supreme Court, Commercial Division. Mr. Ayers also served as an intern with the Appeals Division of the New York City Law Department, as well as the Cape and Islands District Attorney's Office of Massachusetts. Mr. Ayers joined the Firm in September 2021. Mr. Ayers is admitted to practice in the State of New York.

**Samir Aougab** is an Associate at the Firm.  Mr. Aougab is a graduate of the University of North Carolina at Chapel Hill and American University Washington College of Law.  During law school, Mr. Aougab served as an intern at Amistad Law Project where he assisted with civil litigation related to criminal justice.  Mr. Aougab also served as a legal intern at the Public Defender Office in Arlington, Virginia.  Mr. Aougab joined the Firm as a Law Clerk in July 2022.  Mr. Aougab is admitted to practice in the State of Maryland.

**Leah B. Wihtelin** is an Associate at the Firm.  Ms. Wihtelin is a graduate of Fordham University and a *cum laude* graduate of the University of Maine School of Law, where she served as an Articles Editor on the Ocean and Coastal Law Journal.  During law school, Ms. Wihtelin interned at a law firm specializing in complex fire litigation, served as a Student Attorney in the Cumberland Legal Aid Clinic, and served as a Teaching Assistant for the school's legal writing and research program.  Ms. Wihtelin began her career with Rigrodsky Law in 2019 as a Legal Assistant and is admitted to practice in the States of New York and Maine.



**DELAWARE**

1007 North Orange Street, Suite 453

Wilmington, DE 19801

T: (302) 295-5310

**NEW YORK**

825 East Gate Boulevard, Suite 300

Garden City, NY 11530

T: (516) 683-3516

www.rl-legal.com

# B

EXHIBIT  B

## LIFSHITZ LAW PLLC

Attorneys at the firm have represented shareholders as lead counsel, co-lead counsel or as an executive committee member in numerous cases which have resulted in substantial recoveries on behalf of stockholders.  Among the more prominent of these cases are:

- ***In re Altria Group, Inc. Derivative Litigation***, Case No. CL20-705 (Va. Cir. Henrico Cty.), Lifshitz Law was Court appointed Co-lead Counsel in a high-profile shareholder derivative action, securing a settlement that included new funding of $117 million to be used by Altria Group Inc. to implement and maintain certain policy and governance measures relating to youth tobacco usage prevention and M&A transaction oversight. This settlement was one of the largest derivative settlements in 2022.

- ***Nally v. Reichental, et al.,*** Lead C.A. No. 0:15-cv-03756-MGL (D. S.C.) ("*3D Systems*").  Lifshitz Law was Court appointed Co-Lead Counsel to derivatively represent nominal defendant 3D Systems Corporation in a federal shareholder derivative action.

- ***Ely v. Link, Jr., et al.,*** Case No. 1:17-cv-03799 (S.D.N.Y.): Lifshitz Law served as sole counsel in a derivative action representing nominal defendant NewLink Genetics Corporation ("NewLink"), securing a settlement in which NewLink adopted and/or enacted important corporate governance reforms at both the Board of Directors and management levels that left NewLink as a better-governed company with stronger internal controls and greater Board of Directors independent oversight into such important issues such as compliance review and transparency with shareholders.

- ***In re Javelin Mortgage Investment Corp. Shareholders Litigation***, Case No. 24-C-16-001542(Cir. Ct. Baltimore City) ("*Javelin*"): Lifshitz Law was Court appointed Interim Lead Co-Counsel representing a shareholder challenging the consideration received by the target company in a merger.

- ***Ponzio v. John Michael Preston, et al.***, Case No. 8672-VCG (Court of Chancery, Delaware State Court).  Lead Counsel.  Plaintiffs brought this action against directors, officers and insiders of Velcera, Inc., challenging a 2010 financing and merger alleging the transactions were unfair to shareholders. After vigorous litigation including a mediation, plaintiffs obtained a court approved cash settlement increasing consideration to class members by 78%.

- ***In re Laureate Education, Inc. Shareholder Litigation*** (Case No. 24-C-07-000664 (Circuit Court of Maryland).  Court appointed Co-Lead Counsel.  Court approved $35 million cash settlement following four and a half years of litigation.

  In this action, plaintiffs challenged a going private transaction led by the Company's Chief Executive Officer ("CEO").  Plaintiffs brought this action

against the former directors of Laureate Education, Inc. alleging breach of fiduciary duties in connection with the CEO's successful attempt to take the Company private in June 2007 for $62 per share, or an aggregate transaction value of $3.82 billion. After vigorous litigation including extensive and lengthy appellate practice pursued over the course of several years, plaintiffs obtained a settlement of $35 million to the Class.

- ***In re eMachines Securities Litigation***, No. 01-CC-00156 (Superior Court of California, County Of Orange). Co-Lead Counsel, and after 6 years of litigation and "on the eve of trial", obtained a $24 million settlement of class action challenging a going private transaction.

  Plaintiff brought this action on behalf of former shareholders of eMachines against the former directors and executive officers of eMachines alleging breach of fiduciary duties in connection with the Company founder Lap Shun Hui's successful attempt to take the Company private in December 21, 2001 via an unfair process and at the unfair price of $1.06 per share or $161 million in aggregate consideration.

- ***In re Chiron Shareholders Deal Litigation***, Case No. RG 05-230567 (Superior Court of the State of California, County of Alameda). Court appointed Executive Committee Member. Court approved settlement pursuant to which plaintiffs obtained an increase from the initial offer of $40 per share to $48 per share or approximately a total increase of $880 million.

  Plaintiffs challenged an Agreement and Plan of Merger pursuant to which Novartis would acquire all of Chiron's outstanding shares it did not already own for $40 per share.

- ***Giarraputo v. UnumProvident Corp., J. Harold Chandler, James F. Orr, III, Robert E. Broatch and Thomas R. Watjen***, Case No. 99-301-P-C (D. Maine). Court appointed Executive Committee Member. Court approved $45 million cash settlement – one of the largest class action securities recoveries ever obtained in the 1st Circuit.

  Plaintiffs charged that in connection with the merger of Unum Corporation and Provident Companies, Inc., UnumProvident and certain of its officers had violated Sections 10(b), 14(a) and 20 of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 by making, or causing to be made, certain false and misleading public statements.

- ***In re Musicmaker.com Securities Litigation***, Master File No. 00-02018 (United Stated District Court, Northern District of California). Court appointed Executive Committee Member. Court approved $15 million cash settlement.

2

In this action, plaintiffs charged defendants with a scheme to defraud investors through the dissemination of false and misleading statements of material fact contained in, and material omissions from, the SEC filings and other class period public statements by or relating to Musicmaker.com, Inc. in violation of Sections 11, 12(2) and 15 of the Securities Act of 1933 and 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

- ***In Re: Initial Public Offering Securities Litigation,*** Case 21 MC 92 (SAS) (United States District Court, Southern District of New York). Court appointed Litigation Steering Committee Member. Court granted final approval of $586 million settlement.

  Plaintiffs charged that more than 300 public companies, their bankers and their insurers rigged IPOs during the late 1990s Internet boom. The plaintiffs charged that banks manipulated the market with optimistic research; inflated trading commissions in exchange for access to the new shares; and that investors who were allocated IPO shares were required to buy more shares in the after-market to help push up the share price. They claimed the issuers were guilty of the same charges because they were aware of the schemes and benefited from stock prices that as much as tripled in opening days of trading.

- ***In re Rite Aid Corporation Derivative Litigation v. Alex Grass, Rite Aid Corp. et al.***, C.A. No. 17440 (Court of Chancery, Delaware State Court, New Castle County). Court appointed Co-lead Counsel. Court approved a global settlement of class and derivative actions in the Eastern District of Pennsylvania including $5 million cash settlement for Delaware and Pennsylvania derivative actions.

  This was a derivative action brought pursuant to Rule 23.1 of the Rules of the Court of Chancery, by plaintiff a stockholder of Rite Aid. In the action, plaintiff charged that the Board of Directors of Rite Aid breached their fiduciary duties by failing to oversee adequately the Company's growth and maintain adequate internal controls which resulted in Rite Aid being sued under the federal securities laws.

- ***In re Homestead Village, Inc. Shareholder Litigation***, Consolidated C.A. No. 24-C-O-001556 (Circuit Court Baltimore, State of Maryland). Court appointed Executive Committee Member. Court approved settlement of $10.9 million.

- ***In re Avis Group Holdings, Inc. Shareholder Litigation***, Consolidated C.A. No. 18212 (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. The Court approved a settlement of the Action increasing consideration for Avis Group Holdings, Inc. ("Avis") shareholders of $4 per share or approximately $100 million in aggregate consideration in connection with a merger of Avis with Cendant Corporation.

This litigation was brought in response to the announcement by Cendant Corporation of the proposed acquisition of the publicly-owned shares of Avis for consideration consisting of $29.00 per share in cash. At the time the proposed transaction was announced on August 15, 2000, Cendant owned approximately 17.8% of the outstanding shares of Avis common stock, held an economic interest in Avis of approximately 33%, and had three designees on Avis' 10-member board of directors and, thus, was Avis' controlling stockholder with attendant fiduciary duties. The Action was brought as a class action on behalf of all Avis stockholders against Cendant and its directors, seeking injunctive and other appropriate relief on the grounds that the Proposed Transaction was unfair in a number of respects, including timing and price.

- ***In re Prodigy Communications Corp. Shareholders Litigation***, Consolidated C.A. No. 19113-NC (Court of Chancery, Delaware State Court; New Castle County). Court appointed Co-Lead Counsel. The Court approved a settlement increasing consideration for Prodigy shareholders from $5.45 to $6.60 per share, or approximately $81 million).

  The Action was brought to challenge a proposed acquisition of the publicly owned Class A shares of Prodigy Communications Corp. by SBC Communications Inc. for $5.45 per share in cash. At the time, by virtue of its Class B stock holdings, SBC controlled approximately 42% of the voting power of the Company. The Action was brought as a class action on behalf of all Prodigy shareholders (except defendants and their affiliates) against SBC and the directors of Prodigy seeking injunctive and other appropriate relief on the grounds the Proposed Transaction was unfair to Prodigy's public shareholders in a number of respects, including price.

- ***In re Kroll-O-Gara Shareholders Litigation,*** Case No. CV 9911 2178 (Court of Common Pleas, State of Ohio, Butler County). Court appointed Co-Lead Counsel. Court approved settlement of action Ordering Kroll to institute substantial material therapeutic benefits including requirements that the Company establish a Special committee to consist of not less than three independent directors to review annually, Kroll's shareholder protection defense measures, including relevant bylaws and proposed bylaws and any change in control agreements involving management of Kroll and recommend to Kroll's full Board of Directors any changes deemed by them to be in the best interests of Kroll's stockholders.

  Plaintiffs originally challenged a proposed sale of Kroll to Blackstone for $18.00 per share in cash. Pursuant to the terms of the acquisition, defendant Jules B. Kroll, certain other members of Kroll-O'Gara's management and defendant American International Group, Inc. were to retain ownership of not less than 7.7% of Kroll-O'Gara's common stock. Subsequently, Kroll announced that Blackstone had informed Kroll that it had terminated the Blackstone Acquisition. Thereafter, Kroll-O'Gara announced that its Board had approved an Agreement and Plan of

Reorganization and Dissolution which provided for the separation of Kroll-O'Gara's primary businesses -- the Security Products & Services Group (O'Gara-Hess & Eisenhardt Armoring) and the Investigations & Intelligence Group (Kroll Risk Consulting Services) -- into two stand alone companies, the "O'Gara Company" and "Kroll Risk"  Thereafter, Kroll announced that the Spin-Off would not be pursued and, instead, that Kroll-O'Gara had signed a definitive agreement to separate the Products and Services Group (O'Gara-Hess & Eisenhardt Armoring) and the Investigations & Intelligence Group (Kroll Risk Consulting Services). Thereafter, Kroll-O'Gara announced it had signed a definitive agreement with third-party Armor Holdings, pursuant to which Armor Holdings would acquire Kroll-O'Gara's Security Products and Services Group for $56.5 million.

Plaintiffs then filed their Supplemental Second Consolidated Amended Verified Derivative Complaint which updated plaintiffs' allegations through the Armor Transaction.  In the Supplemental Consolidated Complaint, plaintiffs once again asserted claims against the Individual Defendants for allegedly allowing "internecine disputes" between and among Kroll-O'Gara's management to harm Kroll-O'Gara and for allegedly abdicating their duties by failing to prevent various defendants from harming Kroll-O'Gara and engaging in a continuous course of self-dealing. In the Supplemental Consolidated Complaint, plaintiffs recognized that the class claim(s) that had been previously asserted had been rendered moot by the Armor Transaction.  Accordingly, plaintiffs dropped their class claim(s) and decided to only pursue derivative claims.

- ***Brody v. First Union National Bank***, Index No. 00-001296 (G.J. O'Connell) (Supreme Court State of New York, Nassau County).  Co-Lead Counsel.  Court approved a settlement of consumer class action.

  The Settlement directly remedied the statutory violations complained of in the Action, namely defendant's failure to comply with the New York Motor Vehicle Retail Leasing Act, Personal Law, Article 9-A. As a result of the Settlement, each member of the Class who was charged for and paid excess wear and damages charges received consideration consisting of their pro rata portion of Four Hundred Fifty Thousand Dollars ($450,000) in cash (less attorneys' fees, expenses and notice costs).  The cash consideration resulted in each Class member who was charged for and paid excess wear and damages charges receiving upwards of 60% of any amounts they paid.  In addition, as part of the Settlement, First Union agreed to discontinue any effort to collect excess wear and damage charges from members of the Class.

- ***In re Gramercy Property Trust Stockholder Litigation***, Index No. 652424/2015 (S. Scarpulla) (Supreme Court State of New York, County of New York). Co-Lead Counsel. Court approved a settlement which included disclosure of material

information to Gramercy shareholders enabling them to cast a fully informed vote in connection with the sale of Gramercy.

Plaintiff challenged the proposed of Gramercy to Chambers Street Properties. Under the terms of the Merger Agreement, Gramercy stockholders would receive 3.1898 shares of Chambers for each share of Gramercy common stock owned. In connection with seeking shareholder approval for the transaction, Defendants agreed to supplemental disclosures including, among other things: (i) the financial advisor's analysis concerning the *Dividend Discount Model Analysis* and *Selected Public Trading Analysis*; (ii) potential conflicts of interest with existing financing and contractual arrangements resulting from a transaction with Chambers; and (iii) information concerning the background of the Proposed Transaction.

- ***Roof v. Sterling C. Scott, et al.***, Case No. 2:14-cv-3777-CAS (JEM) (C.D. Cal.). Lifshitz Law acted as sole derivative counsel in federal shareholder derivative action alleging breaches of fiduciary duty by the board of directors of Grow Life, Inc., which resulted in a beneficial settlement for shareholders involving substantial corporate reforms.

- ***Berkowitz v. Sino Gas International Holdings, Inc., et al.***, Lead Case No: 140902517 (Third Judicial District Court, State of Utah, Salt Lake County). Co-Lead Counsel. Court approved a settlement which included disclosure of material information to Sino Gas shareholders in order to make an informed decision to vote or seek appraisal in connection with a proposed going private transaction.

Plaintiff challenged a proposed sale of Sino Gas to a consortium of private equity funds and buyers including Morgan Stanley Private Equity Asia, Inc., Zhongyu Gas Holdings Ltd. and two other entities created for the purpose of the Merger. Under the terms of the Merger Agreement, Sino Gas stockholders would receive $1.30 in cash for each share of common stock owned. In connection with seeking shareholder approval for the transaction, Defendants agreed to supplemental disclosures including, among other things: (i) the projected financial information considered by Sino Gas's Board of Directors provided to the Company's financial advisor; (ii) the financial advisor's analysis concerning the *Discounted Cash Flow Analysis* and the *Selected Companies Analysis*; and (iii) information concerning the background of the Proposed Transaction.

- ***Ortsman v. Adesa, Inc. et al.***, C.A. No. 2670-VCL (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. Court approved a settlement which included disclosure of material information to Adesa shareholders in order to make an informed decision to vote or see appraisal in connection with a proposed going private transaction.

Plaintiff challenged a merger agreement entered into by Adesa, Inc. pursuant to which Adesa would be acquired by a consortium of private equity funds consisting of Kelso & Company, L.P., ValueAct Capital Management, L.P., and

Parthenon Capital, LLC, Under the terms of the Merger Agreement, Company stockholders would receive $27.85 in cash for each share of common stock. Counsel for the parties to the Action reached agreement to settle the Action, subject to negotiation of a Supplement to the Proxy to be provided to stockholders of Adesa which included disclosure of potential conflicts of interest held by Adesa's financial advisor in connection with the transaction, a detailed description of the genesis of the provision of the option for any potential bidder for Adesa to utilize stapled financing offered by Adesa's financial advisor and the rationale for offering such stapled financing including increasing the potential number of bidders who could participate in the sales process, maintenance of the confidentiality of the process, and disclosure of the final bid instruction letter that Adesa's financial advisor provided to the final bidders which explicitly stated that the financing commitments being offered were optional and not a factor in evaluating a potential bidder's proposal and the financing commitments were being shared with potential bidders solely to facilitate the transaction.

- ***In re Intergraph Shareholder Litigation***, C.A. No. 2398 – N (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. Court approved a settlement which included disclosure of material information to Intergraph shareholders in order to make an informed decision to vote or seek appraisal in connection with a proposed going private transaction.

  Plaintiff challenged a proposed sale of Intergraph Corporation to a consortium of private equity funds including Hellman & Friedman, LLC, Texas Pacific Group and JMI Equity. Under the terms of the Merger Agreement, Intergraph stockholders would receive $44.00 in cash for each share of common stock owned. In connection with seeking shareholder approval for the transaction, Defendants agreed to supplemental disclosures including, among other things: (i) the projected financial information considered by Intergraph's Board of Directors; (ii) certain intellectual property litigation updates; and (iii) valuation of certain of Intergraph's non-core assets.

- ***In re Cardiac Science, Inc. Shareholders Litigation***, Consol. C.A. No. 1138-N (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. Court approved a settlement which included disclosure of material information to Cardiac shareholders in order to make an informed decision to vote in favor of or seek appraisal in connection with a proposed stock-for-stock merger between Cardiac and Quinton Cardiology Systems.

  Plaintiffs challenged a proposed stock-for-stock merger agreement between Cardiac and Quinton which provided for, among other things, the formation of a new corporation, CSQ Holding Company ("CSQ"), the mergers of Cardiac and Quinton into wholly owned subsidiaries of CSQ, and the merger of Quinton into CSQ. Cardiac agreed to revise the Preliminary Proxy Statement to address disclosures requested by Plaintiffs, and agreed to by Cardiac's counsel, including,

among other things, disclosures regarding Cardiac's net operating losses, Cardiac's patent litigation, Cardiac's board of director deliberations, and the factual background concerning the Proposed Transaction.

- ***Schnipper v. Target Logistics, Inc.***, Case No. 24-C-07 (Circuit Court for Baltimore City, State of Maryland).  Sole Lead Counsel.  Court approved the settlement which included disclosure of material information to Target shareholders in order to make an informed decision to vote in favor of or seek appraisal in connection with a proposed going private transaction.

  Plaintiff challenged an Agreement and Plan of Merger by and among Target, Mainfreight Limited and Saleyards pursuant to which Mainfreight would acquire Target. Under the terms of the Merger Agreement, Target shareholders would receive $2.50 in cash for each share of common stock and $62.50 in cash for each share of Class F Preferred Stock.  Among other things, plaintiff alleged that the Target directors breached their fiduciary duties in connection with the proposed Merger by (i) failing to engage in a process best calculated to maximize shareholder value; (ii) failing to fully consider possible alternative transactions with other potential buyers; (iii) approving allegedly improper deal protection devices; and (iv) agreeing to an inadequate price per share. The Complaint also alleged that the Target directors further breached their fiduciary duties in connection with the Company's Preliminary Information Statement by failing to provide full and complete disclosures concerning matters that a reasonable shareholder would deem important under the circumstances.  Target agreed to issue supplemental disclosures in the form an 8-K which such disclosures included information relating to the factual background concerning the Proposed Transaction in addition to financial information used by the Company's financial advisor.

- ***In re Harrah's Entertainment Shareholder Litigation***, C.A. No. 2453-N (Court of Chancery, State of Delaware, New Castle County).  Court appointed Co-Lead Counsel.  Court approved settlement that included, *inter alia*, material curative disclosures caused to be included in Harrah's Entertainment, Inc.'s ("Harrah's") Definitive Proxy Statement seeking shareholder approval of a proposed going private transaction.

  This was a stockholder class action brought by plaintiffs on behalf of the public shareholders of Harrah's common stock.  Plaintiffs sought to enjoin the defendants from causing the Company to be acquired by private equity buyers Apollo Management and Texas Pacific Group as well as the Company's Chairman and CEO, Defendant Gary W. Loveman at an inadequate consideration. Defendants' Counsel and Plaintiffs' Counsel engaged in extensive good faith discussions with regard to a possible settlement, which resulted in an agreement in principle pursuant to which the Special Committee of Harrah's Board of Directors acknowledged that it was aware of and considered the pending stockholder lawsuits claiming breaches of the Board's fiduciary duties with

respect to the potential sale of the Company, prior to obtaining a $9 per share increase in the consideration to be paid to Harrah's stockholders, and the disclosure of information Plaintiffs sought in their complaints in a definitive proxy statement the Defendants caused the Company to file with the SEC and mail to Harrah's stockholders. Those disclosures included, *inter alia*, information relating the background of the merger, the nature of the fees paid to the Company's financial advisor, and detailed information relating the Discounted Cash Flow analysis performed by the Company's financial advisor.

- ***Stern v. Ryan, et al.***, No. 02-16831 (Circuit Court of Illinois County, Chancery Division). Sole Lead Counsel. Court approved settlement of Action on basis of implementation of new comprehensive Corporate Governance Policies.

  Plaintiff alleged, *inter alia*, that the officers and directors of AON had breached their fiduciary duties to AON and its shareholders in the management and oversight of AON's business, particularly with respect to the Company's internal financial and accounting controls. The new Corporate Governance Policies which formed the basis of the settlement included, *inter alia*, establishing a corporate governance website through which shareholders can communicate non trivial matters to independent director, all Executive Vice Presidents and the CFO shall make reports to the Board regarding their respective areas of responsibility, at least annually, and shall meet at least annually with the non employee directors of the Company, the appointment and creation of a lead Independent Directorship, and agreement by the Company that the Audit Committee shall continue to consist of only independent directors.

- ***In re ARV Assisted Living Inc. Shareholders Litigation***, C.A. No. 19926-NC (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. The Court approved a settlement increasing consideration for ARV shareholders from between $3.25 and $3.60 per share to $3.90 per share, or approximately a total between $2.97 million and $6.44 million).

  The action was brought in challenging a proposed acquisition of the publicly owned shares of ARV Assisted Living, Inc. by Prometheus Assisted Living LLC, an affiliate of Lazard Freres & Co. at a price between $3.25 to $3.60 per share in cash. At the time, Promethus owned 43.5% of the Company. The Action was brought as a class action on behalf of all ARV shareholders (except defendants and their affiliates) against the Company, Prometheus and the directors of ARV seeking injunctive and other appropriate relief on the grounds the Proposed Transaction was unfair to ARV's public shareholders in a number of respects, including price.

- ***In Re Bacou USA, Inc. Shareholders Litigation***, C.A. No. 18930-NC (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. Court approved a settlement which included disclosure of material

information to Bacou shareholders in order to make an informed decision to vote or seek appraisal in connection with a proposed going private transaction.

Plaintiff challenged a proposed sale of Bacou USA, Inc. to Christian Dalloz, S.A. Under the terms of the Merger Agreement between Bacou S.A. and Christian Dalloz, S.A. each share of Bacou USA, Inc. not owned by Bacou, S.A. would be cashed out at a price of $28.50 per share. At that time, Bacou S.A. owned and/or controlled over 70% of the outstanding common stock of Bacou, USA. In connection with seeking shareholder approval for the transaction, Defendants agreed to supplemental disclosures including, among other things additional information concerning the Merger.

- ***Wilfred v. Modany et al.***, C.A. No. 13-cv-3110 (JPO) (S.D.N.Y.) (J. Paul Oetken) ("*ITT*"). Court appointed Co-Lead Counsel. Court approved settlement of Action on basis of implementation of new comprehensive Corporate Governance Reforms.

  Plaintiff brought this shareholder derivative action on behalf of ITT Educational Services, Inc. ("ITT") alleging, *inter alia*, that the Board of Directors breached their fiduciary duties by causing ITT's failure to properly account for its obligations under certain risk-sharing agreements ("RSAs") with third-party lenders to increase the availability of private student loans to ITT students. Plaintiff further alleged ITT failed to maintain adequate internal controls over financial reporting and failed to disclose the extent of the risks ITT faced under the RSAs. The new Corporate Governance Reforms, which formed the basis of the settlement included, *inter alia*, enhanced Audit Committee Duties, establishment of a Chief Compliance and Risk Officer, enhanced independence of the Board of Directors and increased director education, compensation policies and practices that reflect and take into account an executive's performance as it relates to both legal compliance and compliance with ITT's internal policies, and adoption of a clawback and recoupment policy.

- ***Meisner v. Fiallo et al.***, No. 19558-NC (Court of Chancery, State of Delaware, New Castle County). Sole Lead Counsel. Court approved settlement of Action on basis of implementation of new comprehensive Corporate Governance Policies.

  Plaintiff alleged, *inter alia*, that certain of the officers and directors of Enterasys Networks, Inc. had breached their fiduciary duties to Enterasys and its shareholders in the management and oversight of Enterasys's business, particularly with respect to the Company's internal financial and accounting controls. The new Corporate Governance Policies which formed the basis of the settlement included, *inter alia*, establishing a corporate governance website through which shareholders can communicate non trivial matters to independent director, all Executive Vice Presidents and the CFO shall make reports to the Board regarding their respective areas of responsibility, at least annually, and

shall meet at least annually with the non employee directors of the Company, the appointment and creation of a lead Independent Directorship, and agreement by the Company that the Audit Committee shall continue to consist of only independent directors.

- ***In re Liberty Satellite & Technology, Inc. Shareholders Litigation***, Consolidated Action No. 20224-NC (Court of Chancery, State of Delaware, New Castle County). Court appointed Co-Lead Counsel. The Court approved a settlement that resulted in approximately $3.5 million or 30% in additional consideration to LSAT public shareholders.

  Prior to the transactions at issue in this litigation, Liberty Media Corporation ("Liberty") owned or controlled approximately 87% of LSAT's outstanding A Series and B Series common stock and 98% of the overall voting power of all LSAT common and preferred stock. The public float of LSAT Series A and Series B common stock was approximately 6 million shares and 400,000 shares, respectively. On April 2, 2003, LSAT publicly announced that it had received a letter from Liberty in which Liberty expressed an interest in a potential business combination with LSAT, pursuant to which the holders of LSAT Series A common stock would receive 0.2131 of a share of Liberty Series A common stock for each share of LSAT stock (the "March Proposal"). On August 5, 2003, plaintiffs and defendants entered into a memorandum of understanding (the "MOU") providing for the settlement and dismissal of the Action, subject to certain conditions, in which Liberty would proceed with a merger (the "Merger") in which the public stockholders of LSAT common stock would receive 0.2750 of a share of Liberty Series A common stock per share of LSAT common stock. Among other things, the defendants acknowledged in the MOU that defendants "took into account the desirability of satisfactorily addressing the claims in the [Action]" when agreeing to increase the consideration to be paid to LSAT's public shareholders by approximately 30%, from 0.2131 to 0.2750 per LSAT share. At the prevailing price of Liberty shares at the time, this increase represented approximately $3.5 million in additional consideration to LSAT public shareholders.

- ***In re Realogy Corp. Shareholder Litigation***, C-181-06 (Superior Court of New Jersey, Chancery Division). Court appointed Executive Committee Member. Court approved settlement of Action on basis of irrevocable waiver by buyer of termination fee in excess of $180,000,000, certain agreements by the Defendants concerning shareholders demands for appraisal rights and the inclusion of certain additional disclosures in the Company's Final Proxy Statement.

  Plaintiffs brought an action challenging an agreement and plan of merger pursuant to which all shares of Realogy common stock would be acquired for $30 per share.

- ***In re Sportsline.com, Inc. Shareholder Litigation***, C.A. NO. 538-N (Court of Chancery, State of Delaware, New Castle County).  Court appointed Co-Lead Counsel.  Court approved a settlement which provided for an increase in the consideration to be paid shareholders of Sportsline.com from $1.50 to $1.75 per share.

   This Action challenged a transaction announced by Viacom, Inc. - an entertainment mega-corporation – an owner of approximately 38% of SportsLine's publicly-traded common stock – to purchase all remaining outstanding shares of the Company at a rate of compensation of $1.50 per share to be paid in cash.

## NOTEWORTHY COMMENTS BY THE COURT

Courts throughout the Country have recognized the skill and experience of the attorneys at Lifshitz Law.  Recent examples include the following:

- ***Nally v. Reichental, et al.***, Lead C.A. No. 0:15-cv-03756-MGL (D. S.C.) ("*3D Systems*").  Lifshitz Law was Court appointed Co-Lead Counsel in a federal shareholder derivative action because "counsel possess extensive experience and impressive records of success in cases similar to the Related Action."  The Court further stated that counsel "ha[s] prosecuted the litigation with well-pled and thorough pleadings."

- ***In re Javelin Mortgage Investment Corp. Shareholders Litigation***, Case No. 24-C-16-001542 ("*Javelin*"):  Lifshitz Law was Court appointed Interim Lead Co-Counsel - representing a shareholder challenging the consideration received by the target company in a merger - over six other plaintiffs' firms that had joined together because "counsel (Lifshitz Law) for [plaintiff] showed initiative and skill." *Stourbridge Investments, LLC v. Daniel C. Staton, et al.*, Case No. 24-C-16-001542 (ORDER) (Cir. Ct. Baltimore City April 29, 2016).

## ATTORNEYS

**Joshua M. Lifshitz**, prior to co-founding Lifshitz Law, he was the co-founder of Bull & Lifshitz, LLP, where he established himself as one of the leading securities class action and derivative law practitioners in the United States.  Securities Class Action Services recognized his predecessor firm on two occasions as one of the top 50 plaintiffs' law firms ranked by total cash amount of final securities class action settlements in which the law firm served as lead or co-lead counsel.  Mr. Lifshitz's practice has included a wide variety of litigation matters involving the federal securities laws, shareholder and consumer class actions, insurance law, federal and state antitrust laws, and various other commercial matters.  Mr. Lifshitz is a graduate of Brooklyn College and St. Johns University School of Law.  Mr. Lifshitz has received his CPA from the State of Maryland.  He is admitted to practice in the State of New York and State of New Jersey and the United States District Court for the Southern and Eastern Districts of New York.

**Matthew Hettrich**, *Associate*, obtained his Bachelor of Arts from Stony Brook University in 2009.  He obtained his Juris Doctorate from Touro College, Jacob D. Fuchsberg Law Center ("Touro Law") in 2016 where he graduated *Summa Cum Laude* and served as the Editor-in-Chief of the Touro Law Review.  Mr. Hettrich handles a variety of litigation matters, including violations of the federal securities laws, and shareholder and consumer class actions. Mr. Hettrich is an attorney in good standing admitted to practice law in the State of New York since February of 2017.

**John Ciulla,** *Associate*, obtained his Bachelor of Arts in Political Science from San Diego State University in 2020. He obtained his Juris Doctorate from St. John's University School of Law in 2023. While studying at St. John's, Mr. Ciulla worked at Lifshitz Law assisting with securities litigation and class action litigation matters. After graduating from St. John's, he worked in the private sector specializing in insurance defense litigation before rejoining Lifshitz Law. Mr. Ciulla is an attorney in good standing admitted to practice law in the State of New York since July of 2024.

**Bryce Wiginton,** *Associate (Pending Admission)*, obtained his Bachelor of Arts in History with a Minor in Business from Auburn University in 2021. He obtained his Juris Doctorate from Hofstra University, Maurice A. Deane School of Law in 2024. While studying at Hofstra he worked at legal positions in both the private and public sector with a focus on tax compliance and risk management. Mr. Wiginton passed the July 2024 New York State Bar Exam and is awaiting admission.